# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | Mag. No.– 13 - MJ - 2032 - MBB |
| **KEVIN PINA** | **FILED UNDER SEAL** |
| **Defendant.** | |

## APPLICATION PURSUANT TO 18 U.S.C. § 2703(d)

Defendant Kevin Pina was charged by criminal complaint on April 3, 2013 for armed

bank robbery pursuant to 18 U.S.C. §§ 2113(a) & (d), after robbing a Blue Hills Bank branch at

gunpoint with another individual (identified as Lavell C. Livramento) in Dedham, Massachusetts

on November 9, 2012. Livramento was arrested by Massachusetts State Police on or about

November 30, 2012. On or about that date, Livramento admitted to law enforcement that,

among other things, he had committed separate armed robberies at the Blue Hills Bank in

Dedham on November 9, 2012 and November 29, 2012, respectively; and had robbed several

other banks beginning in July 2012.

Although Livramento refused to identify his armed accomplice in the November 9, 2012

bank robbery, law enforcement has probable cause to believe that an individual named Kevin

Pina was Livramento's accomplice during this robbery. The United States therefore brings this

motion for an order that may result in obtaining cell tower and other information that can (1)

corroborate that Livramento and Kevin Pina were in communication, and in close proximity,

with each other during the planning, commission, and flight from the November 9, 2012

1

gunpoint robbery of the Blue Hills Bank in Dedham; and (2) provide information that may lead
to the location of where Livramento and Kevin Pina secreted the cash proceeds from the
November 9, 2012 robbery and/or earlier bank robberies that Livramento had committed dating
back to in or about July 2012. The information currently resides with Sprint, concerning a
telephone believed to be Kevin Pina's.

The United States of America moves this Court, pursuant to 18 U.S.C. § 2703(c)(1),
(c)(2) and (d) for an Order that directs Sprint, a provider of electronic communication service, to
disclose the following information, from July 1, 2012 to present, for the Sprint account for
telephone number 508-844-8456, believed to be subscribed by Kevin Pina (hereinafter "Target
Telephone 2"): (A) name; (B) address; (C) local and long distance telephone connection
records, or records of session times and durations; (D) length of service (including start date and
types of service utilized); (E) telephone or instrument number or other subscriber number or
identity; (F) means and source of payment for such service (including any credit card or bank
account number); (G) all data about which "cell towers" (i.e., antenna towers covering specific
geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each
cellular telephone or device assigned to the account (i.e., historical cell-site information); (H) an
engineering map, showing all cell site tower locations, sectors, and orientations; and (I) other
records pertaining to the subscriber and account that do not include the content of
communications (including (1) "Can-Be-Reached" (CBR) numbers – *i.e.*, alternate contact
numbers given by the subscriber; (2) call detail records; (3) telephone toll records, including all
local and long-distance incoming and outgoing calls; (4) any associated equipment information,
ESN (or IMEI and/or IMSI), regarding any other telephone equipment purchased or leased from
your company; (5) records identifying any and all accounts, e-mail accounts, and telephone

2

numbers associated with the subscriber(s) of the above number(s); (6) the phone number(s) and above information for any other telephone numbers or accounts involving the same ESN (or IMEI and/or IMSI), but associated with a telephone not on the above list; (7) the phone number(s) and above information for any other telephone numbers listed to the same account as the above listed number(s) and for any other accounts billed to any subscriber at the same address as the listed number(s); and (8) correspondence and notes of records related to the account).

## LEGAL STANDARDS

The procedure by which the United States may obtain records and other information pertaining to a subscriber of an electronic communications service or remote computing service is set forth in 18 U.S.C. § 2703(c)(1). It states that "[a] governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity – . . . obtains a court order for such disclosure under subsection (d) of this section." 18 U.S.C. § 2703(c)(1). These records can include not only subscriber information as enumerated in § 2703(c)(2) but also any additional records that do not include the content of communications, under § 2703(c)(1).

The government's burden of proof is set forth in Section 2703(d): "A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers *specific and articulable facts* showing that there are *reasonable grounds* to believe that . . . the records or other information sought, are *relevant and material* to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (emphasis added).

3

Accordingly, this Application sets forth the specific and articulable facts showing that there are reasonable grounds to believe that the materials sought are relevant and material to the ongoing criminal investigation, and seeks an order requesting production of those materials and forbidding the provider from notifying the subscriber or anyone else of the request or the production until further order of the Court.

## SPECIFIC AND ARTICULABLE FACTS

1.      I am an attorney for the government as defined in Rule 1(b)(1)(B) of the Federal Rules of Criminal Procedure and, therefore, pursuant to 18 U.S.C. § 2703(c) may apply for an order as requested herein. The following information comes from communications with, and information provided by law enforcement, including Somerville Police Detective T. Michael Ahern, currently assigned to the Federal Bureau of Investigation Violent Crimes Task Force as a special deputy U.S. marshal, and who is the lead investigator in this case.

2.      On or about November 9, 2012, at approximately 4:19 p.m., at the Blue Hills Bank branch that was located at 749 Providence Highway, Dedham, Massachusetts, an Hispanic male wearing a baseball cap and gloves ("Male 1"), and another male, **who was wearing a piece of duct tape over his nose area**, and carrying a small black firearm ("Male 2") entered the bank. After entering the bank, Male 2 ordered - at gun point - the bank patrons and other bank employees to lie on the ground, while Male 1 ordered the bank tellers to hand over money from the bank teller drawers. After Male 1 took approximately $7,964 from the bank tellers and from the bank teller drawers that were located behind the counter, both Male 1 and Male 2 fled the bank. Blue Hills Bank security cameras recorded images of the robbery and captured images of both Male 1 and

4

Male 2 committing the robbery.  The surveillance images showed that during the robbery, **in addition to the duct tape covering Male 2's nose,** Male 2 had what appeared to be a "Bluetooth" device, or wireless earpiece, to a cellular phone in his left ear.

3.          On November 9, 2012, at approximately 4:42 p.m., Dedham Police Department Patrolman Collin O'Sullivan **recovered two pieces of duct tape** in an area within the vicinity of the Blue Hills Bank where witnesses had observed two males fleeing from the Blue Hills Bank shortly after the bank robbery had occurred.  Patrolman O'Sullivan secured the area with other Dedham police officers until State Trooper Colleen Tanguay arrived to process the evidence.  The two pieces of duct tape were collected by Trooper Tanguay on that date, and the U.S. Attorney's Office subsequently submitted a request to the State Police Laboratory to test the two pieces of duct tape for DNA evidence.

4.          On March 13, 2013, the State Police Laboratory notified the U.S. Attorney's Office that DNA was recovered from one of the pieces of duct tape (the "Duct Tape") that was discovered by Patrolman O'Sullivan on November 9, 2012, and that the DNA profile from the Duct Tape was uploaded to the Combined DNA Index System ("CODIS"), which stores known DNA samples, and is used to identify unknown DNA samples.

5.          On or about March 25, 2013, the State Police Laboratory notified Detective Ahern that **the DNA profile recovered from the Duct Tape matched the CODIS DNA profile for**:

> **Kevin M. Pina**
> **DOB: 3/29/1971 (AKA 3/2/1971)**
> **SSN: 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**

6.         On April 2, 2013, the U.S. Attorney's Office telephonically contacted Kira L. Snyder, Forensic Scientist II of the Massachusetts State Police Forensic & Technology Center - DNA Unit, the person who was assigned to perform the DNA testing for the Duct Tape, and Ms. Snyder confirmed that the DNA profile from the Duct Tape matched the prior DNA profile of Kevin Pina (above), which was stored in CODIS.

7.         Approximately two weeks after the November 9, 2012 armed bank robbery, a confidential informant (the "CI"), who was known to the New Bedford Police Department ("NBPD") and who had been paid by NBPD on prior occasions in exchange for providing NBPD with reliable information concerning criminal activity, informed NBPD Detective Trevor Jones that the CI had information regarding the November 9, 2012 Blue Hills Bank robbery.

8.         Specifically, and in sum and substance, the CI informed law enforcement that Livramento and Pina, in the CI's presence, (1) each admitted to committing the November 9, 2012 Blue Hills Bank robbery; (2) Pina stated that Pina had worn duct tape on his face during the robbery; and (3) Livramento stated that he had committed this robbery, and had robbed banks located in Swansea, Dedham, and Taunton, among other locations, as well. The CI also stated that Livramento was missing the ring finger and pinkie finger on his left hand.

9.         On or about November 29, 2012, at approximately 4:42 p.m., at the same Blue Hills Bank branch which was robbed on or about November 9, 2012, an Hispanic male, who was missing the ring finger and pinkie finger of his left hand, entered the bank and demanded money from approximately three bank tellers at knife point. After taking

6

approximately $12,695 in U.S. currency from the bank tellers, the male then fled the scene in a dark colored sedan.

10.               Through a law enforcement database, law enforcement officials obtained information that Livramento owned a gray 2000 Nissan Maxima with Rhode Island license plate registration number 619831. Then, on or about November 30, 2012, at approximately 10:00 p.m., in the vicinity of the Taunton-Freetown border on Route 140 heading southbound, Massachusetts State Police and other law enforcement, located and stopped Livramento's 2000 Nissan Maxima with Rhode Island plate number 619831 as it was going southbound on Route 140.

11.               The police took Livramento into custody, and on Livramento's person, law enforcement recovered a cellular phone, model MetroPCS Coolpad 4G, with telephone number 401-649-5309 ("Target Telephone 1"). Inside Livramento's car was approximately $6,359 in cash. Police officers also observed that Livramento was missing the ring finger and pinkie finger in his left hand. Finally, Livramento admitted that he had committed approximately six bank robberies in Bristol and Norfolk Counties from at least as early as in or about July 2012 to November 2012. (Livramento is currently only charged with committing the November 29, 2012 Blue Hills Bank robbery (see United States v. Livramento, 13-CR-10035 (PBS)), but has not been charged with the November 9, 2012 Blue Hills Bank robbery, which was committed with Kevin Pina.)

12.               Using a law enforcement database, law enforcement determined that Kevin Pina's cellular telephone number was 508-844-8456, with Sprint as the service provider ("Target Telephone 2"). To date, Kevin Pina has not been apprehended in connection with the November 9, 2012 Blue Hills Bank robbery.

7

13.         The requested information should help law enforcement in obtaining cell tower

and other information that can corroborate that Livramento and Kevin Pina were in

communication, and in close proximity, with each other during the planning,

commission, and flight from the November 9, 2012 gunpoint robbery of the Blue Hills

Bank in Dedham, Massachusetts; and assist law enforcement in locating cash and other

derivative proceeds from Livramento's and Kevin Pina's bank robberies.

## CONCLUSION

For the reasons given above, the United States requests an order directing Sprint to

disclose the records listed above because there are reasonable grounds to believe that such

information is relevant and material to an ongoing criminal investigation and not to notify any

other person of the existence of this application until further order of the Court.

The United States finally requests that this application, the Court's order, and all related

Court paperwork be sealed until further order of the Court, except for a copy of the Court's

Order to be served upon Sprint.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:

DUSTIN CHAO
Assistant U.S. Attorney